## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| BLUE PRAIRIE BRANDS, INC., | ) | Case No. 19-12285 (___) |
|  | ) |  |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

## DECLARATION OF THOMAS R. BURROWS
## IN SUPPORT OF DEBTOR'S CHAPTER 11 PETITION AND FIRST DAY RELIEF

I, Thomas R. Burrows, hereby declare under penalty of perjury that the following is true to the best of my knowledge, information, and belief:

1.    I am the Authorized Representative of Blue Prairie Brands, Inc. (the "*Debtor*").

2.    Prior to my present role, I previously served as the Chief Executive Officer of the Debtor and I am familiar with the Debtor's day-to-day operations, business affairs, and books and records.

3.    On the date hereof (the "*Petition Date*"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330 (as amended, the ("*Bankruptcy Code*"), in the United States Bankruptcy Court for the District of Delaware (the "*Bankruptcy Court*").   In order to enable the Debtor to minimize the adverse effects of the chapter 11 filing, the Debtor is requesting various types of relief in "first day" motions and applications (collectively, the "*First Day Motions*")[1] that are concurrently being filed with the Court.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such term in the First Day Motions.

4.      I am submitting this declaration (the "*Declaration*") in support of the Debtor's

chapter 11 petition and First Day Motions in the above-captioned case.  Except as otherwise

indicated herein, all facts set forth in this Declaration are based on my personal knowledge, my

review of public and nonpublic documents, or my opinion, based on my experience and

knowledge of global food and ingredient industries, and of the Debtor's operations and financial

condition.  If called upon to testify, I could and would testify competently to the statements set

forth herein.

5.      Part I of this Declaration describes the Debtor's business and the circumstances

surrounding the commencement of this chapter 11 case.  In Part II of this Declaration, I

substantiate the truth and accuracy of the relevant facts set forth in the First Day Motions filed

concurrently herewith.

## I.      BACKGROUND

### A.      Debtor's Business

6.      The Debtor was founded on July 29, 2016 and is headquartered in Gering,

Nebraska.  The Debtor prides itself on offering innovative ingredients and related food products

rich in prebiotics essential to digestive health.  The Debtor has developed technical expertise and

certain valuable intellectual property for use in the food and beverage industry.  The Debtor's

flagship product is its Blue Prairie Chicory Root Flour.

7.      Chicory root flour is an all-natural functional fiber with prebiotic properties.  The

Debtor developed chicory root flour to address the demand for minimally processed ingredients

produced from whole foods.  The Debtor's chicory root flour is used by food and beverage

brands to add clean-label prebiotic fiber to their products.  Chicory root flour and the other

products produced by the Debtor are unique in that such products are minimally processed and

kept whole-and-intact versus competitive ingredients that are highly processed into an extract or artificial ingredient.

8.      The Debtor has developed proprietary processes that lower the bitter qualities of chicory root.  As such, the Debtor has successfully obtained several valuable patents that gives the Debtor the exclusive rights to produce low bitter chicory products and products made from low bitter chicory flour in the United States.

9.      Just prior to the Petition Date, the Debtor employed approximately seven employees, and outsourced the remainder of its production.  As of the Petition Date, the Debtor will reduce its workforce only to the amount needed to preserve the value of the Debtor's assets during the pendency of this chapter 11 case.

10.     The Debtor generates revenues by selling its products to food and beverages brands that are in the clean-label sector.  The Debtor's principal assets consist of the intellectual property, inventory, and raw product and materials.

**B.      Reasons For Chapter 11 Filings**

11.     While the Debtor believes it has developed unique products (including its flagship product Blue Prairie Chicory Root Flour) and valuable related intellectual property, the development stages have been cost intensive and therefore required a substantial amount of cash to launch.  The Debtor has successfully conducted multiple rounds of financing and has a mixed investor base.  Though its products are highly attractive to and have mixed use in the food, beverage, and ingredient markets, the Debtor remains in the growth stage of its business.

12.     While the Debtor has experienced growth, the Debtor has not experienced positive cash flow on an annualized basis.  Leading up to the filing of this chapter 11 case, the Debtor's operational losses were at least $300,000 per month during production season. As the

losses grew, the interests of the Debtor's investor base to infuse more capital into the company weakened and eventually ceased.

13.    As of the Petition Date, the Debtor has a small amount of cash on hand in its bank accounts.  Consequently, the Debtor no longer has the liquidity required to fund a fully operating payroll, acquire adequate additional raw materials, and satisfy its other working capital needs.  In addition, the Debtor began facing tremendous pressure from its vendors.

14.    Although the Debtor does not possess adequate cash reserves and has been unable to obtain further capital, the Debtor has received significant interest by other industry players, including its customers, in its business and in the acquisition of the Debtor's proprietary production process.  However, the Debtor's lack of funding has inhibited its ability to proceed with a process to maximize its value to stakeholders.  In order to effectuate such process, the Debtor's board of directors and management determined that a chapter 11 filing was necessary to preserve the value of the company in order to facilitate the successful and organized sale of its assets for the benefit of all its stakeholders.

15.    By way of example, as the Debtor reduced its employee base to a "skeleton crew" to facilitate the sale of its business, two pieces of equipment were removed from the Debtor's facility shortly prior to the Petition Date, causing the Debtor to rent a forklift and hire contract employees to prevent five tons of chicory root inside a "hopper" from degenerating, which would cause damage to both the product and the equipment.

16.    Therefore, based on the forgoing, the Debtor's board of directors and management determined that the Debtor needed to avail itself of the automatic stay ancillary to a bankruptcy filing, in order to allow the Debtor to dispose of any non-essential assets in an

orderly fashion and conduct a robust sale process for the Debtor's core assets and technology, so as to result in maximization of the Debtor's value to its stakeholders.

## II.        FIRST DAY MOTIONS AND APPLICATIONS

17.        Concurrently with the filing of its chapter 11 petition, the Debtor is filing certain applications, motions, and proposed orders.  The Debtor requests that the relief described below be granted, as each request constitutes a critical element in achieving a successful outcome that will benefit all parties in interest.

18.        I have reviewed and discussed with Debtor's counsel each of the First Day Motions filed contemporaneously herewith (including the exhibits thereto and supporting memoranda) and incorporate by reference any factual statements set forth in the First Day Motions.  It is my belief that the relief sought in each of the First Day Motions is tailored to meet the goals described above and, ultimately, will be critical to the Debtor's ability to achieve the goals of this chapter 11 case.

## A.        Motion to Continue Cash Management System and Use of Bank Accounts

19.        The Debtor is filing concurrently with the First Day Affidavit a motion seeking entry of orders, *nunc pro tunc* to the Petition Date, pursuant to sections 105(a), 363, 364, and 503 of title 11 of the United States Code Bankruptcy Code (the "*Bankruptcy Code*") and Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*") authorizing: (i) continued maintenance of its existing cash management system and bank accounts; (ii) use of existing business forms; (iii) Debtor's bank to honor certain *de minimis* pre-petition checks that were issued to reimburse employee out-of-pocket expenses; and (iv) granting related relief (the "*Cash Management Motion*").

20.    For a company such as the Debtor's business, the Debtor's cash management system is very streamlined.  The Debtor currently maintains a single checking account and a single savings account, and both accounts are located at Bank of America.  The Debtor's checking account is the primary account in which the Debtor collects and disburses cash generated by its business, satisfies financial obligations, and centrally controls and monitors funds and available cash.  All deposits flow through the checking account and most expenditures are paid out of the checking account.

21.    In addition, the Debtor maintains a business savings account to channel monies to fund certain expenses such as reimbursements to employees for work-related business travel or corporate expenses.  However, as of the Petition Date, the savings account contained only a nominal amount.

22.    For a company of the Debtor's size, it is necessary that the Debtor's Cash Management System remain intact during this chapter 11 case so that the Debtor's limited staffing can continue to collect revenue from anticipated asset sales and make disbursements as seamlessly as possible.  If the Debtor is required to alter the manner in which it collects and disburses cash throughout its Cash Management System, the Debtor's limited staff would have to expend unnecessary human resources that would needlessly frustrate the Debtor's sole focus to implement a chapter 11 strategy designed to maximize the value of the Debtor's estate.

23.    Finally, by the Cash Management Motion, the Debtor also requests authority for the Bank to process certain *de minimis* expense reimbursements that are prepetition expenses and owed to staff that is remaining with the company beyond the Petition Date.  These payments total less than $2,000.00 and were processed for reimbursement prior to the Petition Date.  These

expenses would be reimbursed in the Debtor's ordinary course of business but for the bankruptcy

filing and should be paid under the circumstances of this case.

24.    Based on the foregoing, I believe that the relief requested in the Cash

Management Motion is in the best interest of the Debtor, its estate, and all parties in interests and

should be approved.

**B.    Motion to Establish Procedures for Utilities**

25.    The Debtor is also seeking entry of orders (i) prohibiting utilities from altering,

refusing or discontinuing service, (ii) deeming utilities adequately assured of future performance,

(iii) establishing procedures for determining adequate assurance of payment, (iv) authorizing the

payment of certain prepetition administrative fees relating to Debtor's utility services, and

(v) granting related relief (the "*Utilities Motion*").

26.    In the normal conduct of its business operations, the Debtor receives service from

many utility companies and other providers (collectively, the "*Utility Companies*") for the

provision of sewer, water, gas, waste, electric, and other similar utility services (collectively,

"*Utility Services*").  The Utility Companies include, without limitation, the entities set forth on

the Utilities Service List attached to the Utilities Motion and attached thereto as **Exhibit C**.  The

Utility Companies provide the Utility Services for the Debtor as of the Petition Date.

27.    The Debtor estimates that, in the year prior to the Petition Date, it paid

approximately $121,435.64 in aggregate monthly payments, on average, to the Utility

Companies for Utility Services rendered.

28.    As set forth above, the Debtor's operations are conducted from its corporate

headquarters in Gering, Nebraska.  In all instances, preserving the Utility Services on an

uninterrupted basis is essential to preserve the value of the Debtor's business and, therefore, to

the success of the Debtor's chapter 11 objectives.  Any interruption in the Utility Services, even for a brief period, would seriously jeopardize the Debtor's sale efforts and, ultimately, value and creditor recoveries.  It is therefore critical that the Utility Services continue uninterrupted during this chapter 11 proceeding.

Date:  October 27, 2019

By: ___*/s/ Thomas R. Burrows*_____
Thomas R. Burrows
Authorized Representative of the Debtor